[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff and the defendant intermarried on July 23, 1966 in Bethlehem, Pennsylvania. The plaintiff for more than one year prior to May 1, 1999 has resided continuously in the State of Connecticut. The plaintiff and the defendant have no minor children issue of the marriage nor have any children who are minors been born to the plaintiff since the date of the marriage to the defendant. There have been no governmental funds contributed toward the support of this family. CT Page 1068
The plaintiff seeks a dissolution of the marriage on the grounds that it has irretrievably broken down and the court so concludes and finds.
Based upon the relevant, admissible and credible evidence and the reasonable inferences therefrom, the court makes the following findings of fact and conclusions of law. The plaintiff and the defendant lived together until 1990 when the defendant/husband removed himself from the marital home and has, since that time, maintained a separate residence. From 1990 through 1994 he contributed to the support of the marital home and the plaintiff by making mortgage payments and certain utility and upkeep payments on the home. The plaintiff has continuously resided in the marital home at 13 Mary Mac Loop in Clinton, Connecticut, and it is her desire to remain living in this home. The parties have two adult children. In 1989 and 1990 the defendant's mother died, his father having died a couple of years earlier and he inherited an estate that, in his estimation, was then between $250,000 and $300,000. This estate was inherited prior to the separation of the parties. Prior thereto and during this period the parties maintained accounts which ultimately approximated $125,000 under the Uniform Gift to Minors Act which was used basically to pay the tuition room and board for their two children at the colleges that they attended. While the defendant claims that he maintained these separate accounts and he made those payments from these accounts, the plaintiff, in fact, paid all of the other miscellaneous college expenses, which were substantial, for two children during four years of college each, without assistance from the defendant. Since 1994, the defendant has made no monetary contributions toward the support or maintenance of the plaintiff and/or the family home.
From the testimony of each of the parties the court concludes that each perceive the other's conduct as being somewhat demanding or domineering and concludes that the marriage has broken down irretrievably, as previously noted, and that such breakdown is not due to the fault of one more than the other and accordingly the court finds that each contributed jointly, at least in the eyes of the other to the breakdown of the marriage.
The father has established a close relationship with another woman starting in about 1994 and the court concludes that this marriage had broken down prior to his establishing this close social relationship with another lady. CT Page 1069
For whatever reasons, the plaintiff and the defendant maintained separate accounts for the past many years of their marital relationship but the court finds that all of the assets acquired by both of the parties during the course of their marriage are, in fact, marital assets and subject to the equitable distribution orders of this court. Funds that the mother separately acquired have been used indiscriminately for family purposes over the years and funds that the defendant/father acquired either by earning investment or inheritance have been similarly used.
The parties have each agreed of record and the court hereby approves and orders that each shall retain as their own separate property their retirement pension accounts. It is to be noted that the defendant retired in 1994 and is presently claims to use his pension as his principal source of sustenance. Each party shall pay the debts as indicated on their separate financial affidavits and hold the other party harmless in connection therewith.
The interest of the defendant in the Vermont property which has a value of $3,000 is set over and assigned by the court to be the defendant's property. The interest of the parties in and to the marital home at 13 Mary Mac Loop in Clinton, Connecticut, is set over and assigned to the plaintiff to be her solely owned property and its value is established at $146,500. The defendant shall retain the 1998 Voyager Plymouth and he shall execute whatever documents are necessary to transfer to the plaintiff the 1986 Honda.
The defendant shall hold the wife harmless from any IRS liability as a result of his preparation and/or income reported on returns prior to 1999.
The court finds and orders that the plaintiff owns and shall retain the following accounts with the values as indicated:
— IRA Mutual Fund $ 77,192
— 403k $ 1,478
— Merrill Lynch IRA (EX2) $ 11,185
— Checking/Savings Accounts $ 1,000 CT Page 1070
 — Clinton, Conn. Real Estate $146,500 _________ TOTAL: $ 237,355
Subject to the QDRO (Qualified Domestic Relations Order) hereinafter to be decreed, the defendant owns and shall retain the following assets with the indicated values:
— Fidelity Ultra $ 411,976
— Fidelity IRA $ 74,392
— Checking/Credit Union Savings $ 300
— 401k (SNET) $ 1,043,246
 — Vermont Real Estate $ 3,000 ___________ TOTAL: $ 1,532,914
Thus, the court concludes that the total marital estate amounts to $1,770,269, one-half of which amounts to $885,134.50.
The court finds that taking into account all of the statutory factors including the health of the parties and their earning capacity and their contributions and the causes of the breakdown of the marriage and any other criteria appropriate that an even division of the above capital marital assets is appropriate in this situation in which these parties have presented themselves.
Accordingly, in order to equalize said above estates, the court decrees that a Qualified Domestics Order shall be prepared and executed in the amount of $646,279 to be applied to the 401k of the defendant in favor of the plaintiff in order to balance the ownership of the capital assets of this marriage.
A decree is entered dissolving the marriage.
It is so ordered.
HIGGINS, J. CT Page 1071